# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE WOODSON, an individual;<br>SABINE WOODSON, an individual,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>COUNTRYWIDE HOME LOANS, a<br>foreign corporation authorized to do<br>business in California, and DOES 1<br>through 10, inclusive,<br><br>                    Defendants. | CASE NO. 09cv2707-LAB (JMA)<br><br>**ORDER ON DEFENDANT'S<br>MOTION TO DISMISS** |

This is the rare case that alleges violations of the Truth in Lending Act ("TILA") in home loan documents, but doesn't involve a home in or facing foreclosure. In fact, the Plaintiffs' home doesn't exist any longer. It was destroyed in a wildfire that ravaged southern California in the fall of 2007. Plaintiffs discovered the alleged TILA violations, they say, when they were living in a rental home and trying to determine how to finance the building of a new home on their torched property.

## I.     Factual Background

Until it was destroyed, the Woodsons owned a home at 17116 El Vuelo in Rancho Sante Fe, California. They obtained two loans from Countrywide in January of 2007, using the property as collateral. The first loan, obtained on January 15, 2007, was a refinance loan

for $2 million. The second loan, obtained on January 19, 2007[1], was a home equity line of credit for $800,000.[2] After their home burned, the Woodsons received $500,000 from their insurance company, all of which was applied to the second loan.

On January 7, 2009, the Woodsons' lawyer wrote to Countrywide with a "loan audit" detailing various failures to disclose and overstatements in the loan documents. (Compl. Ex. 1.) The letter threatened rescission of the loans, but proposed instead a "loan subordination" on the following terms:

> [O]ur clients would accept a settlement of their claims by way of a subordination of the first priority Countrywide loan to a new construction loan for the reconstruction of their home. This subordination would entail the payoff in full of the second priority Countrywide loan at the time of the subordination. The proposed construction loan would be in the amount of $4,000,000 and would be made by La Jolla Bank and Trust . . . In light of this, we would propose that the remaining loan's interest rate be modified to a fixed interest rate of 4.5% for the balance of the term of the loan. This adjustment would be sufficient to allow our clients to continue to hold the property pending construction of their new home and to be able to pay principal and interest payments on a monthly basis . . . .

(*Id.*) Countrywide either failed to respond to the January 7, 2009 letter or else responded in the negative.[3]

The Woodsons' lawyer followed up with a second letter on May 19, 2009. (Compl. Ex. 2.) That letter asserted and exercised a right to rescind the loans under TILA, voiding Countrywide's security interest in their property. The letter also represented that the Woodsons were prepared to tender the amount due under the loans. Finally, the letter offered, for the second time, to renegotiate the first priority loan in lieu of rescission.[4] Again, Countrywide either failed to respond or else declined the Woodsons' overtures.

---

[1] The complaint (¶ 19) says the second loan was obtained on January 19, 2009, which the Court presumes is an error.

[2] That the first loan was a refinance loan and the second a home equity line of credit the Court gathers from Countrywide's motion to dismiss.

[3] The record isn't clear on this point.

[4] The first letter proposed a renegotiated fixed interest rate of 4.5%, and the second letter proposed a rate of 4.625%.

## II. Procedural History

The Woodsons filed the present lawsuit on October 12, 2009. It was removed to federal court on December 3, 2009. The Woodsons state six causes of action. The first and second allege violations of TILA and the California Business and Professions Code, respectively. The third cause of action seeks declaratory relief. The fourth cause of action alleges predatory lending in violation of the California Financial Code. The fifth and sixth causes of action allege fraud and negligent misrepresentation, respectively.

Countrywide filed a motion to dismiss the Woodsons' complaint, and, in the alternative, a motion to strike portions of it, on December 10, 2009. Countrywide's stance is that the TILA and other violations the Woodsons allege are concocted in order to force the loan subordination and modification that the Woodsons need if they're to afford the construction of a new home on their property.

## III. Legal Standard

A rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering such a motion, the Court accepts all allegations of material fact as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). A complaint's factual allegations needn't be detailed, but they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[S]ome threshold of plausibility must be crossed at the outset" before a case can go forward. *Id.* at 558 (internal quotations omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

While a court must draw all reasonable inferences in the plaintiff's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form

of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted). In fact, no legal conclusions need to be accepted as true. *Ashcroft*, 129 S.Ct. at 1949. A complaint doesn't suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* That includes a mere formulaic recitation of the elements of a cause of action; this will not do either. *Bell Atlantic Corp.*, 550 U.S. at 555. The general point of these pleading requirements is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

**IV.  Discussion**

The Court will consider the Woodsons' claims in sequence.

    **A.  Truth in Lending Act Claims**

The Woodsons' first cause of action alleges violations of TILA. They seek rescission of the loans as well as actual damages, statutory damages, and costs. (Compl. ¶ 32.)

        **1.  Timeliness Concerns - Damages**

Claims for damages under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The Woodsons' loans were executed on January 15 and 19, 2007. To the extent they seek damages for "Defendants' failure to deliver all the material disclosures required by the Truth in Lending Act" (Compl. ¶ 30), the claim is time-barred. It was due on January 19, 2008.

The failure to rescind, however, "is itself a separate violation" of TILA for which damages are available. *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, No. 05-CV-7097, 2007 WL 1832113 at *1 (N.D. Ill. June 25, 2007). Specifically,

> Where a creditor refuses to cancel a loan after receiving timely notice of rescission, the creditor violates TILA . . . Pursuant to 15 U.S.C. § 1640(e), the obligor has one year from the date of refusal to file suit for damages arising out of the failure to rescind.

*Brewer v. IndyMac Bank*, 609 F.Supp.2d 1104, 1114 (E.D. Cal. 2009). To the extent the Woodsons seek damages *only* for Countrywide's failure to rescind the loans (Compl. ¶ 31), and not for the alleged non-disclosures and overstatements that gave rise to the asserted

right to rescind, the claim is not time-barred. The Woodsons' notice of rescission is dated May 19, 2009,[5] and "within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). That means that the one-year statute of limitations began to run *21* days after May 19, 2009, or June 9, 2009. This lawsuit was filed on October 12, 2009, just four months later. The Woodsons' claim for damages based upon a failure to rescind the loans is therefore timely.[6]

### 2. Timeliness Concerns - Rescission

TILA gives borrowers the right to rescind a loan transaction "until midnight of the third business day following the consummation of the transaction." 15 U.S.C. § 1635. Countrywide argues that it's too late for the Woodsons to rescind the loans because they were executed more than three days ago; in fact, they were executed more than two *years* ago.

Countrywide must know, however, that a borrower's right of rescission expires three *years* after the date of consummation of a transaction if the borrower doesn't receive the notices and material disclosures that TILA requires. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). The Woodsons allege TILA violations that would have the effect of activating this extension, and they initiated this lawsuit within three years of January 19, 2007, the loan consummation date. Their claim for rescission, assuming the underlying TILA violations are adequately pled, is therefore timely.

---

[5] Countrywide actually disputes that the May 19, 2009 letter was a valid rescission notice, an issue to be addressed below.

[6] Countrywide accuses the Woodsons of switching theories, first arguing, in their complaint, that they are entitled to damages for underlying TILA violations, and then arguing, in their opposition brief, that they are entitled to damages for Countrywide's failure to rescind the loans because of the underlying TILA violations. As the Court reads the Woodsons' complaint, however, both theories are articulated. Paragraph 30 seeks damages for Countrywide's alleged "failure to deliver all the material disclosures required by the Truth in Lending Act," and paragraph 31 claims damages for "Defendants' failure to take the action necessary and appropriate to reflect the termination of the security interest within 20 days after Plaintiffs' rescission of the transaction."

### 3. Rescission - Offer to Tender

Countrywide argues that the Woodsons' rescission claim — and, presumably, its claim for damages for Countrywide's failure to rescind — must fail because the Woodsons "have failed to allege that they have tendered the loan proceeds to Countrywide." Not only that, Countrywide argues that the Woodsons' *offer* to tender the loan proceeds is insufficient because it is conditional. The May 19, 2009 rescission letter sent to Countrywide by the Woodsons' lawyer stated, "Our clients are prepared to tender an amount due after appropriate credits are made by you to the subject account." (Compl. Ex. 2.) The Woodsons' complaint states, "Plaintiffs are prepared to tender a principal amount after the appropriate credits are made for interest, finance charges and any other fees or payments applicable under the statute." (Compl. ¶ 27.) Finally, the complaint's prayer for relief seeks

> [a]n order that, because Defendants failed to act in response to Plaintiffs' notice of Rescission, Plaintiffs have no duty to tender the loan proceeds to Defendants, but in the alternative, if tender is required, a determination of the amount of the tender obligation in light of all of the Plaintiffs' claims, and an order requiring the Defendants to accept tender on reasonable terms and over a reasonable period of time.

(Compl. p. 16.) Countrywide also points out that the May 19, 2009 letter contained the heading "<u>REQUEST FOR LOAN MODIFICATION</u> *(And Notice of Rescission)*," and gave Countrywide 30 days to respond (rather than the 20-day period required by TILA), which undermines, arguably, the Woodsons' claim that the letter was a plain and proper rescission notice.

There is no need for further analysis. This Court has already found that an almost identical complaint filed by the Woodsons' lawyer in another case (following an almost identical rescission letter sent to the defendant lender) did an inadequate job of pleading facts that would establish an ability to tender. *See Cook v. Wells Fargo Bank*, No. 09-CV-2757, 2010 WL 1289892 at \*4 (Mar. 26, 2010). The plaintiffs in that case alleged in their complaint that they were "prepared to tender a principal amount after the appropriate credits are made for interest, finance charges and any other fees or payments applicable under the statute." *Id.* Their prayer for relief sought an order that "Plaintiffs have no duty to tender the

loan proceeds to Defendant, but in the alternative, if tender is required, a determination of the amount of the tender obligation in light of all of Plaintiffs' claims, and an order requiring the Defendant to accept tender on reasonable terms and over a reasonable period of time." *Id.* The rescission letter stated, "Our clients are prepared to tender an amount due after appropriate credits are made by you to the subject account." The exact same pleadings appear in this case, and faced with them in *Cook* Judge Hayes concluded,

> The Complaint's allegation that Plaintiffs 'are prepared to tender a principal amount' is a conclusory statement and fails to meet Plaintiffs' burden of alleging the factual basis of their entitlement to relief. Plaintiffs have alleged a willingness, or 'preparedness,' to tender, but have not pled facts that would establish their ability to tender. Plaintiffs have thus failed to provide '[f]actual allegations . . . enough to raise [their] right to relief above the speculative level' as to their TILA claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

*Id.* at *5. The Woodsons note in their opposition brief that their case "is unlike the majority of truth in lending cases brought before California Courts in that the Woodson's [sic] are **actually ready and willing to tender the entire amount of the borrowed funds** in the event that the Court determines that it is necessary." (Opp'n Br. at 6.) Be that as it may, there is no difference between the pleadings in this case and the pleadings in *Cook* that justify a different decision here on the question of tender. The Woodsons' TILA claims are dismissed without prejudice.

### B.     Remaining Claims

Judge Hayes's decision in *Cook* continues to be helpful with respect to the Woodsons' remaining claims. In short, the Court needn't reach them because, with the Woodsons' TILA claim gone, the Court lacks jurisdiction over the remaining claims in the complaint. The Notice of Removal asserts federal question jurisdiction pursuant to 28 U.S.C. § 1331 in virtue of the TILA claims, and supplemental jurisdiction over the Woodsons' state law claims; there is no apparent basis for diversity jurisdiction. *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has dismissed all claims over which it has original jurisdiction.").

//

## V.     Conclusion

Countrywide's motion to dismiss is **GRANTED WITH LEAVE TO AMEND**. The Woodsons have thirty days from the date this order is entered to file an amended complaint. A few admonitions:

First, the Woodsons obviously filed the same boilerplate complaint that their lawyer has used in other cases he has litigated or is litigating. The Court frowns upon that. The Court expects, and Countrywide is entitled to, a fresh complaint that is perfectly tailored to the facts of this case. A boilerplate complaint, when recognized as such, immediately detracts from the seriousness with which anyone can be reasonably expected to take a plaintiff's case. Frankly, it makes it appear that a case is driven more by a lawyer's business model than by a client's actual interests.

Second, the Woodsons are advised to read the *Bell Atlantic* and *Iqbal* decisions insofar as they address pleading standards that a complaint must meet in order to survive a motion to dismiss. *Conley v. Gibson*, which the Woodsons cite in their opposition brief, is no longer the best law on this issue.

Third, the Woodsons allege a number of deficiencies (nondisclosures, understatements, etc.) in the loan documents provided by Countrywide. In their amended complaint, they should make clear what statutes each alleged deficiency violates.

**IT IS SO ORDERED**.

DATED:  June 23, 2010

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge